UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL STEPHAN,

    Plaintiff,

v.

OTIS ELEVATOR COMPANY,    Case No. 08-14451
                  Honorable Julian Abele Cook, Jr.

    Defendant.

ORDER

  This lawsuit involves claims by the Plaintiff, Daniel Stephan, who alleges that his job was wrongfully terminated by the Defendant, Otis Elevator Company ("Otis Elevator"),[1] in violation of the Michigan Persons with Disabilities Civil Rights Act ("Disabilities Civil Rights Act"), as codified by Mich. Comp. Laws § 37.1101, et seq.[2] Currently pending before the Court are the parties' cross-motions for a summary judgment.

I.

  Otis Elevator Company is a corporation that was organized under the laws of the State of

---

[1] The Court has used "Otis Elevator" and "Company" interchangeably throughout this opinion without any intention to give emphasis to its usage.

[2] Stephan had originally pled claims for violation of the Disabilities Civil Rights Act, intentional infliction of emotional distress, intentional interference with a contract and prospective advantages, retaliatory discharge in violation of the Disabilities Civil Rights Act , and respondeat superior in the Wayne County Circuit Court of Michigan. The case was removed to this federal court on October 20, 2008. On April 8, 2009 the Court accepted Stephan's filing of an amended complaint which eliminated all of his claims with the exception of the Disabilities Civil Rights Act and retaliatory discharge counts. On June 4, 2009, the parties stipulated to a dismissal of Stephan's retaliatory discharge claim with prejudice, leaving only the issue relating to the Disabilities Civil Rights Act for resolution by this Court.

New Jersey, with its principal place of business in Connecticut. Daniel Stephan is a sixty-six year old Michigan resident who had been employed by Otis Elevator from 1998 until his termination in 2008. Otis Elevator maintained three different departments at the Company site where Stephan worked; namely, (1) the modernization department (responsible for updating existing elevator equipment); (2) the service department (devoted to the maintenance of elevator equipment); and (3) the construction department (which focused its efforts on the installation of elevator equipment).

According to the collective bargaining agreement between the parties, Local 36 of the International Union of Elevator Constructors ("the Union") represented the interests of the elevator mechanics, helpers, and apprentices. During all times that are relevant to this litigation, Stephan was a member of the Union and worked as a third year apprentice in the service department.

As a third year apprentice, Stephan's duties included (1) the testing of the safety of the elevators; (2) the driving to and from various job sites several times throughout the month in his personal vehicle or in an Otis Elevator truck; and (3) the handling of other miscellaneous duties to which he was assigned by an elevator mechanic.[3] The elevator safety responsibilities required Stephan to push a significant amount of weight onto elevators in 500-pound increments. There were occasions when he, acting upon the requests of the elevator mechanics, was obligated to handle heavy material (e.g., rolls of wire or paint which sometimes weighed in excess of 100 pounds). Stephan's job assignments required him to be able to lift a maximum of 100 pounds approximately 75% of his work day, and to travel up to 95% of the time.

Stephan's personnel records indicate that he took a leave of absence from the Company in

---

[3] These job assignments were consistent with the standards that had been established by the National Elevator Industry Educational Program for those persons who work as an elevator apprentice at Otis Elevator.

August of 2007, when he underwent quadruple cardiac bypass surgery. Although his doctors, including a cardiologist, cleared Stephan to return to work in November of the same year, he did not resume his employment at that time because he did not feel strong enough to handle the arduous work responsibilities. In March of 2008, Stephan - now presumably feeling better - was given a clearance by his family physician, Dr. Paul G. Thomas, to return to work on March 10, 2008. Dr. Thomas's note indicated that Stephan (1) had been totally incapacitated from July 13, 2007 until March 10, 2008, but (2) could return to work on March 10, 2008, and (3) had undergone quadruple cardiac bypass surgery.[4]

Upon his return to work in March of 2008, he was referred to Joseph Steger, who served as the field operations manager for the Company's service department. Steger, who was neither Stephan's regular supervisor nor familiar with his work history, felt it necessary to examine this employee's personnel file. According to Steger, his review of the personnel records revealed four significant things; namely, (1) the Union had placed Stephan on a "hold status"; (2) Stephan, having undergone cardiac bypass surgery, was on medical leave from July 13, 2006 until May 7, 2007, when he returned to work without restrictions; (3) after working for a period of two months following the return to his job in May of 2007, Stephan underwent quadruple bypass surgery which necessitated a second medical leave from Otis Elevator; and (4) Stephan failed a certification exam that had been administered by the Department of Transportation ("DOT") upon a finding that he was "unable to perform the essential functions, medical restrictions pending – medical hold."

On the basis of this information, as well as the physically demanding aspects of Stephan's

---

[4]The note did not make any reference as to whether Stephan was being released by his doctor to return to work with or without any restrictions.

job, and the "ambiguity" as to whether his return to work was conditional (i.e., with or without restrictions), the Company, with the consent of the Union, asked him to submit to an evaluation to determine if he continued to possess the ability to perform the duties of an elevator apprentice.

Thereafter, Otis Elevator retained the services of Dr. Marcia Trape, to whom information from Stephan's personnel file and a description of his job duties was forwarded for her use.[5] Acting upon Dr. Trape's request, he underwent examinations (i.e., a Nuclear Stress test, a Dobutamine Stress Echocardiogram, and a DOT certification examination) by other professionals. On April 3, 2008, the results of his examinations were submitted to Otis Elevator which, in turn, forwarded them to Dr. Trape for her evaluation.

Ultimately, Dr. Trape concluded that - on the basis of Stephan's performance results and a description of his job duties - he (1) was no longer able to safely perform the functions of an elevator apprentice and (2) should not return to the Company in his former position. The results of her findings were as follows:

> Mr. Stephan has several medical conditions that are chronic and severe in nature, including insulin dependent diabetes mellitus with peripheral neuropathy and coronary heart disease with cardiomyopathy and decreased ejection fraction precluding him to perform [sic] the essential functions of his job without placing his health in danger. . . . Mr. Stephan [sic] ejection fraction has been estimated to be between 20-30% with a dilated cardiomyopathy putting him at risk for congestive health failure and other complications with increased demands to his heart.

On Thursday, April 17, 2008, Otis Elevator forwarded Dr. Trape's findings to the Union, which

---

[5]While Otis Elevator has characterized her as an independent physician, Stephan challenges this description after noting that Dr. Trape has a long standing business relationship with the Company.

Stephan had authorized to act on his behalf during the "fitness for duty" evaluation process. These results were forwarded with the following note from Elizabeth Ceriello to the Union representative:

> Here is the letter from the company doctor. As you can see, Dan is not cleared to return to work. Before we make our final employment decision, Dan has the opportunity to consult with his medical advisors and present ideas to Otis [Elevator] as to how he can safely perform the apprentice job, with or without accommodation.

According to Otis Elevator, it did not receive any response to this invitation from Stephan or the Union. Under these circumstances, the Company determined that Stephan should not return to his last position as an elevator apprentice, believing it to be the only job with which he had the work skills within the organization to perform. Stephan disputes this conclusion.

On April 21, 2008, a Union representative, Richard Egerer, faxed copies of letters to Otis Elevator from Dr. Paul G. Thomas (Stephan's family medical doctor) who, after reviewing (1) his patient's Nuclear Imaging / Exercise Protocol, (2) the results of the Stress Echocardiogram and (3) the physical employment requirements at the Company, concluded that "[Stephan] is able to resume employment full time with no restrictions." A similar letter from Dr. Chris P. Liakonis (Stephan's cardiovascular surgeon) which was also forwarded to Otis Elevator on the same day, indicated that "[Stephan] has been cleared from my cardiovascular surgery standpoint to return to work."

On June 5, 2008, the Union provided Otis Elevator with Stephan's authorization for Dr. Trape to speak to his cardiologist. However, the Company maintains that her several efforts to reach Stephan's cardiologist were unsuccessful. Moreover, Dr. Trape learned that the physician to whom she had been referred by the Union had neither seen nor treated Stephan, and that his partner, Dr. Nizam Habhab had not seen Stephan for approximately one year prior to their telephone

conversation.[6] Although Stephan passed a stress test on July 1, 2008, Dr. Trape found the results to be unpersuasive. Furthermore, it was her belief that these tests provided less information than the evaluations that she had reviewed earlier. Accordingly, she advised the Company on July 28, 2008 that her opinion about Stephan's ability to serve as an elevator apprentice remained unchanged.

On the basis of Dr. Trape's medical assessment, Otis Elevator concluded that Stephan should not be allowed to return to work, noting that he (1) had not requested a transfer to a different position, and (2) was only eligible for a certain job (i.e., that of an elevator apprentice) under the collective bargaining agreement. Approximately one month later, this lawsuit was initiated by Stephan.

## II.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Federal Rule of Civil Procedure 56(c), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.

---

[6]According to the Defendant, Stephan had originally treated with Dr. Habhab, but neglected to return for a follow up visit with the doctor following his quadruple bypass surgery.

6

1991). It is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

III.

Here, Otis Elevator alleges that there is no genuine issue of a material fact to be resolved as to whether it violated Stephan's rights under the Disabilities Civil Rights Act, which prohibits discriminatory acts against persons on the basis of their physical disabilities. This statute was enacted to ensure that all people, regardless of their disability, are afforded "equal opportunities to obtain employment, housing, and the utilization of public accommodations, services, and facilities." *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 472 (1999). The Michigan Supreme Court has noted that the Disabilities Civil Rights Act exists "to mandate the employment of the handicapped to the fullest extent reasonably possible." *Peden v. City of Detroit,* 470 Mich. 195, 203 (2004).

Under this statute, "an employer shall not . . . discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment,

7

because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." Mich. Comp. Laws. § 37.1202(b). The word "disability" includes "[b]eing regarded as having a determinable physical or mental characteristic" that "may result from disease, [or] injury, . . . if the characteristic: (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . ." Mich. Comp. Laws. § 37.1103(d). Thus, in order to establish a *prima facie* case that an employer "regarded him" as disabled under this Disabilities Civil Rights Act, Stephan must prove each of the following elements:

(1) he was regarded by the employer as having a determinable physical or mental characteristic that substantially limits one or more of his major life activities;

(2) the perceived characteristic was regarded as being unrelated to his ability to perform the duties of a particular job or position; and

(3) he was discriminated against in one of the ways delineated in the statute.

*Michalski v. Reuven Bar Levav*, 463 Mich. 723, 732 (2001). If a plaintiff proves a *prima facie* case of purposeful discrimination, the burden then shifts to the defendant to rebut such evidence with a legitimate, non-discriminatory reason for its actions. *Peden*, *supra at 205*.

In its January 7, 2010 motion for a summary judgment, Otis Elevator argues that (1) Stephan cannot establish a *prima facie* case of discrimination under the Disabilities Civil Rights Act and (2) there is no evidence that the Company proffered a pretextual reason for refusing to reinstate him. Each of these contentions will be considered seriatim.

A. The First Element of Stephan's *Prima Facie* Case of Discrimination

First, Otis Elevator contends that Stephan cannot legitimately claim that it deemed his heart condition to have substantially limited him from performing a major life activity, including the

activity of working.[7] In the Company's view, there is no evidence in the record to suggest that its officials believed that Stephan's physical characteristics prevented him from performing a class or wide range of jobs. To support this position, Otis Elevator urges the Court to review the Michigan Court of Appeals decision in *Chiles, supra*, where the court opined that "the inability to perform a *particular* job does not constitute a substantial limitation," and held that "[i]nstead, the impairment must significantly restrict an individual's ability to perform at least a wide range of jobs." *Chiles* at 478 (emphasis in original); *See also, Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.") (internal citations omitted).

In response, Stephan acknowledges that the Sixth Circuit Court of Appeals has determined that in the context of the Americans With Disabilities Act, which is similar in purpose to the Disabilities Civil Rights Act, a plaintiff must be precluded from a "class of jobs" in order to be regarded as being substantially limited in the major life activity of working. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 650 (6th Cir. 2001) (defining "class of jobs" as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.") (citing 29 C.F.R. § 1630.2(j)(3)(ii)(B)).

Based on this definition, Stephan urges the Court to conclude that "Otis [Elevator] can be imputed to believe that [his] heart condition not only disabled him from this particular job, but from

---

[7]Those Michigan courts that have examined this question have characterized working as a major life activity under the Disabilities Civil Rights Act. *See generally, Stevens v. Inland Waters, Inc.*, 220 Mich. App. 212, 217-18 (1996).

9

a broad class of jobs that would be open to [him]." (Stephan's Response to Otis Elevator's Motion for Summary Judgment at 6). Stephan has also presented supplemental testimony from Steger that the elevator apprentice position existed within three independent departments at the Company, all of which were housed under a single roof (i.e., modernization, service, and construction). Thus, Stephan urges the Court to conclude that the elevator apprentice positions in the three different departments represent three distinct classes of jobs.

Stephan's argument is unavailing inasmuch as he freely admits that the evidence (through the deposition of testimony of Steger) shows that (1) the same physical demands apply to each elevator apprentice job, which bear identical titles, and (2) the same type of people are used to perform these positions, with the only distinction being that those elevator apprentice employees who are found among the three departments merely perform different facets of the elevator work. (Otis Elevator's Motion to Amend at 5, citing Steger Deposition at 100-101). Moreover, as the Defendant notes, the Plaintiff himself testified that the gist of his claim is that the company wrongfully believed that he could not perform the job of an elevator apprentice. There is nothing in the record to suggest that the company believed that Stephan was disqualified from heavy lifting jobs in general, or that these types of jobs were the only kinds of positions for which it believed the Plaintiff was generally eligible. A careful review of the record thus reveals that notwithstanding his *arguments* to the Court, Stephan has failed to present any evidence or testimony to overcome the Company's contention that it only considered him to be disqualified from working a particular job. Yet, it is well established that when a motion for summary judgment is properly raised and supported, "[t]he non-moving party . . . may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine

issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Because Stephan has not presented a genuine issue of a material fact as to this particular element of his *prima facie* case, the Court concludes that a summary judgment in favor of the Defendant must be granted.

  B.  <u>The Defendant's Proffered Legitimate, Non-Discriminatory Reason</u>

Otis Elevator further submits that even if Stephan could establish a *prima facie* case, the Company relied upon Dr. Trape's medical opinion to form a good faith belief that Stephan's heart condition rendered him unfit to return to work. In this regard, Otis Elevator notes that "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

However, in light of the ruling by the Court as to the insufficiency of the Plaintiff's *prima facie* case of discrimination, the Court will not examine this question since Stephan has not established that there is sufficient evidence to allow the burden to switch to the Defendant. Accordingly, Otis Elevator's motion for a summary judgment must be, and is, denied.

III.

Stephan has also asked the Court to grant his motion for a summary judgment as to the Company's reliance on purported hearsay from Dr. Trape. To support his claim, he asserts that Dr. Trape's letters to Otis Elevator - upon which the Company relies heavily - are out of court statements that have been submitted to support the truth of the matter asserted . He also claims to have sustained a special prejudice from the death of Dr. Trape while this case was pending. Thus, it is Stephan's position that his opportunity to cross-examine her is now lost forever.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the

11

declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Here, Dr. Trape's letters indicate that Stephan suffers from chronic medical conditions which place his physical health in danger if increased demands are placed on his heart. Otis Elevator does not agree that Dr. Trape's letters are being offered for their truth (namely, to show that Stephan's health was compromised). Rather, Otis Elevator submits that these letters have been proffered as evidence of its intent and to demonstrate the effect of the diagnosis on its decision to terminate him from employment. After the reviewing the record, the Court finds that the letters are admissible, not to confirm or refute the nature of Stephan's medical condition, but as evidence of the information upon which the Company relied in refusing to return Stephan to work.

Even if the Court deemed Dr. Trape's correspondence to be hearsay, however, they would still qualify as records of a regularly conducted business activity under Fed. R. Evid. 803(6), inasmuch as the letters were prepared as part of Trape's longstanding relationship with Otis Elevator. In pertinent part, Rule 803(6) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . . The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

To lay a foundation in support of this exception, the Company offers the declaration of Elizabeth Ceriello, who opined that (1) she had worked with Dr. Trape throughout Stephan's return to work process, (2) Dr. Trape regularly performed return to work evaluations by virtue of Otis

12

Elevator's contractual relationship with the University of Connecticut, (3) it was Dr. Trape's regular practice to prepare reports like the one at issue here, and (4) her opinion was maintained as part of the Company's file relating to Stephan's employment status. (Otis Elevator's Response to Stephan's Motion for Summary Judgment at 6). Ceriello's declaration reflects that she possesses sufficient knowledge to validate the record keeping practices of Dr. Trape and thus can attest to the authenticity of the documents, since a "qualified witness" under Rule 803(6) need not have participated in the making of the record. *See generally, United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) (noting that "all that is required is that the witness be familiar with the record keeping system."). The Court is therefore satisfied that (1) the Company's reliance on Dr. Trape's medical assessments is legally proper and (2) the Plaintiff's request for the entry of a summary judgment is without merit.

IV.

For the reasons that have been stated above, Otis Elevator's motion for a summary judgment is granted inasmuch as Stephan has not presented sufficient evidence of the Company's belief that he had a disability which substantially limited one of his major life activities. Moreover, Stephan's motion for the entry of a summary judgment must be denied inasmuch as Dr. Trape's testimony does not qualify as hearsay, and even if it did, it would fall within an exception for records of a regularly conducted business activity.

IT IS SO ORDERED.

Dated:   September 8, 2010                              s/Julian Abele Cook, Jr.
         Detroit, Michigan                              JULIAN ABELE COOK, JR.
                                                        United States District Judge

<u>Certificate of Service</u>

  I hereby certify that on September 8, 2010, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                   <u>s/ Kay Doaks</u>
                   Courtroom Deputy Clerk